# EXHIBIT B

*Develop 3 Group, LLC, et al. v. Ceasons Holdings, LLC and John D. Davenport*, Adv. Proc. No. 25-04157-mxm (Bankr. N.D. Tex.)

## Statements in Plaintiffs' Motion to Continue [Adv. Doc. 76], Declaration of Counsel [Adv. Doc. 77], argument at the October 15, 2026 hearing, and Motions for Reconsideration [Adv. Docs. 83, 85] that the record contradicts

Exhibit B to Defendants' Motion for Sanctions and Brief in Support; item numbers track Part III of the Motion. "Mot." is Adv. Doc. 76 and "Recon." is Adv. Doc. 85, each cited by paragraph and page because its paragraph numbering restarts. "Decl." is Adv. Doc. 77. "Tr." is the transcript of the October 15, 2026 hearing (Exhibit C), by page and line. "Resp. Ex. A" and "Resp. Ex. B" are the email strings attached to Defendants' Response in Opposition [Adv. Doc. 79]; "Ex. D" is Mr. Moon's June 25, 2026 email. "Doc." without "Adv." refers to Case No. 25-44890.

| What Plaintiffs told the Court | What the record shows | Where |
|---|---|---|
| **In the 56(d) Motion and the Declaration** | | |
| 1. "These depositions were initially scheduled for dates in [MONTH], 2026, prior to the October 15, 2026 summary judgment hearing." Decl. ¶ 24 (sworn under 28 U.S.C. § 1746). | The bracketed "[MONTH]" is an unfilled template blank. The depositions were set twice: for June 29–30, 2026, which Mr. Moon cancelled on June 25 because he was not "ready to proceed" with "so many of the documents that have been produced," and, on notices served Sunday, Aug. 23, 2026, for Sept. 15–16, moved by agreement to Sept. 22–23, which Mr. Moon cancelled at 9:15 p.m. on Sept. 21. | Ex. D; Resp. Ex. B (Aug. 23, 2026 email; Sept. 21, 2026, 9:15 p.m. email; Sept. 22, 2026 email ¶ 1) |
| 2. Plaintiffs "[p]articipated in all required case management conferences and complied with all court deadlines and orders." Decl. ¶ 49(g) (sworn). At the hearing: "We have designated two experts and everything." Tr. 58:10–11. | Plaintiffs' counsel did not appear at the Feb. 26, 2026 status conference [Adv. Doc. 15] or the Sept. 24, 2026 docket call; designated no expert by the July 26, 2026 deadline (60 days before docket call) or since; served deposition notices and a "Third" Request for Production on Aug. 23, 2026, after the Aug. 10 close of discovery; and filed no response to the MSJ by Aug. 17, 2026. The Court had found the expert deadline passed moments before counsel claimed two designated experts. | Scheduling Order, Pt. III ¶ 1 [Adv. Doc. 14]; L.B.R. 7007-1(e); Tr. 24:25–25:17, 58:5–11; Doc. 91, Ex. B at 1; Resp. Ex. B |
| 3. The depositions "were necessarily postponed due to Defendants' production of critical accounting records," Mot. ¶ 7(b), at 3; "[t]he postponement … was necessitated by Defendants' late production," Mot. ¶ 26, at 10; Decl. ¶¶ 15(b), 31, 50(c), 55(b) (sworn); Recon. ¶ 18, at 7. | Plaintiffs' counsel withdrew Plaintiffs' own notice at 9:15 p.m. on Sept. 21, the night before the Davenport deposition. The email cites the mediation, the claim objection filed that afternoon, untimely "Third" Request responses that were not yet due, and an "independent auditor"; it does not mention the accounting memorandum, which Plaintiffs had held for 25 days. The Declaration itself admits that "Plaintiffs' counsel determined that the previously scheduled depositions needed to be postponed." Decl. ¶ 29. At the hearing counsel gave a third reason, that after the memorandum "we had basically nothing to depose Mr. Davenport or the corporate representative about," and in the next sentence asked for time to "take the deposition of Ms. Banks and Mr. Davenport." Mr. Davenport was prepared and available. | Resp. Ex. B (Sept. 21, 2026, 9:15 p.m. email; Sept. 22, 2026 email ¶¶ 1, 6); Decl. ¶ 29; Tr. 12:14–21 |
| 4. "[T]he absence of primary documentation such as draw schedules, advance registers, invoices, payment histories, or bank statements," Decl. ¶ 17(c); records "have not been produced," Decl. ¶ 47 (sworn); Plaintiffs "believe that additional primary records exist … (such as bank statements, wire transfer confirmations, canceled checks, invoices, vouchers, draw schedules, and payment registers) that have not been produced," Mot. ¶ 30, at 11; Recon. ¶ 20, at 8. | Every category is listed by Bates number in Mr. Ginn's own index of documents he reviewed: bank statements (CEASONS_001297–001474, 023317–023405; index at 21–22, 235); loan draw summaries (CEASONS_001254–001259, 001287–001288; at 20–21); QuickBooks account registers (CEASONS_001475–001481, 001484–001490; at 22); payoff calculations (CEASONS_000844–000845, 001010; at 15, 17); and hundreds of entries for contractor invoices, draw requests, and closing statements. The loan-level ledger and closing-and-proceeds schedule were produced in native Excel (CEASONS_001482–001483; updated at 023406). The same Declaration acknowledges "the approximately 27,000 pages of documents Ceasons had previously produced in discovery." Decl. ¶ 28. The memorandum itself states that "all activity for both a given loan and any associated escrow account was included within the information already provided in the | Doc. 91, Ex. B; Doc. 91, Ex. E ¶ 6; Decl. ¶ 28; Ceasons' Resp. ¶ 10 [Docs. 92–93]; Resp. Ex. B (Sept. 22 email ¶ 1) |

| | | |
|---|---|---|
| | production." And on Sept. 22, 2026, Ceasons answered Plaintiffs' untimely "Third" Request and identified, by Bates range, the documents Plaintiffs kept saying had not been produced. | |
| 5. Rule 56(d) requires the nonmovant to show five enumerated elements (a)–(e), citing *January v. City of Huntsville*, 74 F.4th 646 (5th Cir. 2023). Mot. ¶ 18, at 6. | *January* states no five-element test. It applies the two-part *Beattie*/*Raby* standard (why the discovery is needed and how it would create a genuine dispute of material fact) plus the requirement that the nonmovant "diligently pursued discovery," and it affirmed the denial of an "eleventh hour" request made after discovery closed. Defendants pointed this out at the hearing; the Court found *January* "directly on point." | 74 F.4th at 651–52; *Beattie*, 254 F.3d at 606; *Raby*, 600 F.3d at 561; Tr. 17:7–10, 26:10–14 |
| 6. 11 U.S.C. § 542(e) authorizes "appointment of an independent auditor." Mot. ¶ 28, at 11; Decl. ¶ 41 (sworn). | Section 542(e) permits the court to order a person holding recorded information relating to the debtor's property or financial affairs "to turn over or disclose such recorded information to the trustee." It says nothing about auditors and does not reach a creditor's own books. The Debtors' own Objection asked for a Rule 2004 examination instead. | 11 U.S.C. § 542(e); Doc. 89 at 8 |
| **At the October 15 hearing** | | |
| 7. "[T]here had really never been any documentation provided as to a loan ledger as to what advancements, what disbursements were made on a loan for a draw request, what interest rates were accrued, what interest rate was charged, what payments were made," Tr. 5:24–6:4; the Banks memorandum "basically said we don't have any of those documents that Mr. Moon has requested," Tr. 6:13–15; the records Ceasons "had not been willing to produce to us really didn't actually exist," Tr. 11:1–3. | The memorandum says the opposite: loan-level detail is kept in spreadsheets that are "the client's primary system of record," and "all activity for both a given loan and any associated escrow account was included within the information already provided in the production." The loan-level ledger, payment histories, payoff statements, draw and disbursement schedules, QuickBooks registers for every note and escrow account, and bank statements were produced at the Bates ranges listed in item 4, and Defendants identified them to counsel by Bates number on Sept. 22, 2026: "You had them when you noticed Mr. Davenport's deposition and when you agreed to today's date." | Doc. 91, Ex. E ¶¶ 2, 6; Doc. 91, Ex. B; Resp. ¶¶ 7–8 [Adv. Doc. 79]; Resp. Ex. B (Sept. 22 email ¶ 1) |
| 8. Ceasons' Oct. 12 response date for the claim objection was "a set deadline that is set by the claims objection by the Rules," Tr. 52:8–9, so the 56(d) Motion could not be filed until Ceasons responded. Recon. ¶ 23, at 9; ¶ 39, at 13. | The Oct. 12 date came from the negative notice in the Debtors' own objection, filed by Mr. Moon's own clients, which used the 21-day default legend instead of the 30 days L.B.R. 9007-1(c) and Rule 3007(a)(1) require for a claim objection. Mr. Moon told chambers the response was filed "[p]ursuant to the negative notice set forth in such joint objection." Ceasons responded on Oct. 12, more than a week before the earliest permissible deadline. Nothing in the rules tied Plaintiffs' Rule 56(d) motion to that response, and the Court found the claim objections' relevance to the MSJ "speculative at best." | Docs. 84–85, 89–93; Resp. Ex. A; L.B.R. 9007-1(c); Fed. R. Bankr. P. 3007(a)(1); Tr. 25:24–26:4 |
| **In the Reconsideration Motions** | | |
| 9. The findings that the 56(d) Motion was untimely or filed in bad faith "are not supported by any evidence in the record," and "the record contains none." Adv. Doc. 83 ¶¶ 31–32; Recon. ¶¶ 35–36, at 13. | The same motion admits that Plaintiffs received the memorandum on Aug. 27 and did not move until Oct. 14 (48 days); that the depositions "were postponed" by Plaintiffs; that counsel waited for Ceasons' Oct. 12 claim-objection response before moving; and that counsel was out of the state from Sept. 30 through Oct. 13. The Declaration admits counsel "determined" to postpone the depositions. The Court's findings rest on the docket: no MSJ response, no expert, one deposition, a missed docket call, and a motion filed at 3:28 p.m. the day before the hearing. The docket itself establishes untimeliness: the MSJ response was due Aug. 17, 2026, and the 56(d) Motion came Oct. 14. | Recon. ¶¶ 17–18, at 7; ¶ 23, at 9; ¶ 39, at 13; Decl. ¶ 29; Tr. 24:22–26:22 |
| 10. Defendants' "seemingly intentional delay" in producing the memorandum "after the expiration of the discovery deadline and the deadline for filing a response to the MSJ," Recon. ¶ 6(b), at 4; ¶¶ 12–13, at 6; at the hearing, "the circumstances of the way this happened sure seem to indicate" a lawyer "holding | The memorandum is not a withheld record. Plaintiffs asked for it in their "Third" Request served Aug. 23, 2026, after discovery closed. It is a short document from Ceasons' outside CPA, dated Aug. 25 and served Aug. 27, that explains how an existing QuickBooks file is organized; it is not a production of records, and it confirms that the loan-level information was already in the production. Plaintiffs | Doc. 91, Ex. E; Resp. ¶ 7 [Adv. Doc. 79]; Resp. Ex. B (Aug. 23 email); Brief, Parts V.A–F [Adv. Doc. 55] |

| | | |
|---|---|---|
| off on a document until after deadlines have run," Tr. 51:8–13, after counsel had placed the memorandum in "May or June," Tr. 6:8–10. | agreed to the Sept. 22 deposition date with it in hand and had 26 days to prepare. The memorandum has nothing to do with the grounds of the MSJ, which rest on the written releases, the statute of frauds, the absence of a fiduciary duty, justification, the usury notice and savings clauses, and the absence of evidence on each element. | |
| 11. "Since the filing of the MSJ, there have been a number of disputed discovery matters brought before the Court regarding the continued lack of production of loan administration files/software and other documents by Ceasons." Recon. ¶ 19, at 8. | One discovery motion has been brought before the Court in this proceeding: Plaintiffs' June 28, 2026 motion to compel on ten requests, including "all documents concerning payments" and "interest rates, fees, charges." After a July 27 hearing the Court sustained every objection and denied the motion "in its entirety." That motion was filed before the MSJ, not after it. Its principal complaints concerned requests that had never been served on Ceasons and purported Ceasons responses that bore no resemblance to the responses Ceasons actually served. On July 10, 2026, twelve days after filing the motion, Mr. Moon wrote that he had "only gotten to 16,420" of the pages Ceasons produced. No other discovery motion has been filed by anyone. | Adv. Docs. 46, 50 (at 6–7), 58 |
| 12. Deciding the MSJ before claim-objection discovery "constitutes reversible error" under *Wichita Falls* and *Culwell*, Recon. at 3 n.1; *Gavenda v. Strata Energy* is "a seminal Texas Supreme Court case" on recoupment, Recon. at 5 n.2. | Neither case holds that. Each is a Rule 56(f) decision that turned on a timely motion and the movant's diligence before the close of discovery; *Culwell* distinguishes *Baker* because that plaintiff "was entirely responsible for creating the situation," which is this case. *Gavenda* is a division-order case decided on unjust enrichment; the word "recoup" appears only in its statement of facts, and the opinion announces no recoupment doctrine. | *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992); *Culwell v. City of Fort Worth*, 468 F.3d 868, 871–72 (5th Cir. 2006); *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 691–92 (Tex. 1986) |