# EXHIBIT C

Develop 3 Group, LLC, et al. v. Ceasons Holdings, LLC and John D. Davenport,
Adv. Proc. No. 25-04157-mxm (Bankr. N.D. Tex.)

Transcript of October 15, 2026 Hearing on
Motion for Summary Judgment [Adv. Doc. 54] and
Amended Motion to Continue Hearing [Adv. Doc. 76]

Exhibit C to Defendants' Motion for Sanctions

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (FORT WORTH)

| | |
|---|---|
| IN RE: | Case No. 25-44890-MXM-11 (Jointly Administered) |
| PARKERVILLE, LP, ET AL., Debtors. | Chapter 11 |
| DEVELOP 3 GROUP, LLC, ET AL., Plaintiffs, v. CEASONS HOLDINGS, LLC, ET AL., Defendants. | Adv. No. 25-04157-MXM |
| | Thursday, October 15, 2026 1:30 P.M. |

TRANSCRIPT OF HEARING ON
MOTION FOR SUMMARY JUDGMENT (54) AND
AMENDED MOTION TO CONTINUE HEARING (76)
BEFORE THE HONORABLE MARK X. MULLIN
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Recorder: Myah Trevino
Eldon B. Mahon U.S. Courthouse
501 West 10th Street
Fort Worth, Texas 76102

Transcription Service: Liberty Transcripts
9107 Topridge Drive
Austin, Texas 78750
(847) 848-4907
DBPATEL1180@GMAIL.COM

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Debtors: Joyce W. Lindauer Attorney, PLLC
BY: JOYCE W. LINDAUER, ESQUIRE
117 South Dallas Street
Ennis, Texas 75119

For the Plaintiffs: Law Offices of James P. Moon, P.C.
BY: JAMES P. MOON, ESQUIRE
101 Vintage Drive, Suite 100
Red Oak, Texas 75154

For the Defendants: Kane Russell Coleman Logan PC
BY: CHARLES JEFFREY NOVEL, ESQUIRE
ANDREW ROBERTSON, ESQUIRE
901 Main Street, Suite 5200
Dallas, Texas 75202
(214) 777-4200
jnovel@krcl.com

INDEX


| | PAGE |
|---|---|
| MATTERS HEARD: | |
| AMENDED MOTION TO CONTINUE HEARING (76) | |
| **Court's Ruling - Denied** | **24** |
| Argument by: Mr. Moon | 4 |
| Argument by: Mr. Robertson | 13 |
| MOTION FOR SUMMARY JUDGMENT (54) | |
| **Court's Ruling - Under Advisement** | **59** |
| Argument by: Mr. Novel | 27,49 |
| Argument by: Mr. Moon | 42,50 |

(The proceeding commenced at 1:30 p.m.)

THE CLERK: All rise.

THE COURT: Good afternoon. Please be seated.

All right. We're here this afternoon for the Court 1:30 docket. This afternoon we have Develop 3 Group, LLC versus Ceasons Holdings, LLC et al. We'll go ahead and take appearances here in the courtroom first. Mr. Novel?

MR. NOVEL: Jeff Novel and Drew Robertson for the Defendants, Ceasons Holdings LLC and John Davenport.

THE COURT: All right. Thank you. Mr. Moon?

MR. MOON: Your Honor, James Moon on behalf of the Plaintiffs in the adversary proceeding. Also online on Webex is Ms. Joyce Lindauer, counsel for the Debtors.

THE COURT: All right. So, we initially had the motion for summary judgment set for hearing. Mr. Moon, you had filed a motion to continue. Why don't we take up that issue first.

MR. MOON: Okay. May I approach up here, Your Honor?

THE COURT: You may.

MR. MOON: Your Honor, first let me apologize for the late filing of the motion for continuous. Obviously, the Court's well aware we filed a claim objection to the two proofs of claim that Ceasons had filed. And their response was due on Monday of this week. They filed their response about 6:30, and I was traveling back for my 50th wedding anniversary, and so

didn't actually see it until late last night. But please excuse the late filing of that.

But I think the motion for continuous is pretty simple, as far as -- although it was lengthy and it had a lengthy declaration attached. Essentially, Your Honor, we have filed a claims objection to the proof of claim based on the discovery and documents that have been provided thus far to us.

As the Court will remember early on, we had some discovery issues regarding compelling production of documents. The Defendants had originally produced a little less than 2,000 pages in the original state court lawsuit. After we filed a second request for production and then a third request for production, an additional 27,000 pages were produced, although they had told us at the state court that was basically all they had. And we're not here to complain about production today.

But because of that, part of the discussions that Mr. Novel and I had continued to have was to get the documents that really just evidence basically four things. What advances were made to this Debtor on these loans, to these Debtors? And as the Court will recall, there are about nine entities that are the Plaintiffs. These Plaintiffs were all involved in various development loans over the course of about eight years, eight to nine years.

And there were at one time, I think, 14 loans pending. And so there had really never been any documentation

provided as to a loan ledger as to what advancements, what disbursements were made on a loan for a draw request, what interest rates were accrued, what interest rate was charged, what payments were made, and how those payments were made, either payments from the borrower or payments from the sale of collateral.

And so Mr. Novel was very helpful. We had a long discussion, several conversations. And finally, I think back in May or June, the memorandum, was that probably -- May or June, Jeff, maybe? They produced a memorandum that we've referred to in our claims objection as the accounting memorandum. The CPA law firm -- I mean, excuse me, the CPA firm that represents and handles the accounting for Ceasons Holdings produced a memo that basically said we don't have any of those documents that Mr. Moon has requested.

And, Your Honor, I think that that is very critical as far as the claims objection and this motion for continuance. It is attached. I've got a copy of that memorandum just for the Court's reference. May I approach, Your Honor?

THE COURT: Of course.

MR. MOON: Does Your Honor have it there?

THE COURT: I do.

MR. MOON: Okay. So, Your Honor, I don't know if the Court's had an opportunity to read this. But to be honest, it was downright shocking that the accountant would make and

disclose this type of information. From my perspective and interpretation, I'll leave the Court to do that, it basically says we don't have any records. We keep common records, common files on all of our loans for all of our borrowers. They even use one bank account to advance all disbursements, to receive payments, both borrower payments and sales proceeds payments from title companies.

All of the hubbub and all of the concern and all of the objections that they had to producing the QuickBooks files became very obvious when we saw this memorandum. And that is the admission by the accountant that QuickBooks does not even track their loans. They basically have income and revenue items of payments for interest. They do not track the loans separately. Loan level details maintained outside of the accounting system manually by Mr. Davenport personally.

The mortgage software that they have relates not to the loan administration, but just to proposing loans and everything. Their bank activity is entered into QuickBooks with just a generic deposit ledger. They just enter deposits without regard to who they are. They're not posted to a particular loan that would reveal to these Debtors and to these Plaintiffs what amounts were actually being accrued for interest against the loan, what amounts were being paid against the loan, what amounts were being re-accrued once payments had been applied, and what any outstanding principal balance was at

any time.

And the memo makes it very clear that all of those controls over the main accounting system for Ceasons was basically within the hands of John Davenport, that he took the numbers from what he had and basically built his own spreadsheets. And he made the discretion as to what information would be put into a spreadsheet, what wouldn't be, what loan it was applied to, what loan it was not applied to, how interest was accrued, how to allocate fees and loan administration charges against it.

And even as far as on Page 6 there, there was only a single general cash account into which all these payments of all the borrowers of this creditor were deposited, which we believe in and of itself is a violation of the Bankruptcy Code as far as proceeds from these Debtors and everything.

In addition, the attorney's fees and the loan administration fees admittedly have not been broken out by loan. Parkerville and Oporto, the two Debtors, had loans on the De Soto properties. Most of the other -- and Kapsen Development -- most of the other loans were in relation to what we referred to as the Waxahachie properties.

And so literally, as the Court can tell from the declaration that our CPA who reviewed this memorandum said, there is literally no physical possible way to ascertain from the 27,000 pages of records that they produced how these loans

were disbursed, how they were drawn, how the interest was accrued, how the loan payments were applied, or how they were allocated to the respective loans, such that obviously could create obligations between the Debtor, the two Debtor Plaintiffs, and the other seven Plaintiffs that could be -- although they're intercompany receivables, that raises the possibility that misapplications of payments to the wrong creditor -- excuse me, to the wrong loan, could result in claims by these Debtors against those particular other Plaintiffs for reimbursement of those amounts for the balance.

It almost appears, Your Honor, to the CPA as if everything was being piled on the Waxahachie loans to get them off the books so that Ceasons could keep the balances high on the Parkerville Meadows, on the DeSoto properties, because that's where there were two pending contracts that they knew for a year were going to result in the sale of those properties and proceeds to pay on the loan.

So based on that, Your Honor, we filed the claims objection. And as this Court is well aware, in connection with claims litigation in the bankruptcy court, the filing of the proof of claim is prima facie evidence of the debt. We listed it as contingent, disputed, and unliquidated. They filed their proof of claim. They met their initial prima facie burden.

But both the cases in this district and in the Fifth Circuit are clear that once an objection is filed to that proof

of claim by the Debtor or by the U.S. Trustee's Office or by a trustee, that the prima facie case goes away and that the burden then shifts back to the creditor to prove that they kept accurate and correct records that justify and provide the detail whereby a reasonable person, in this case the Debtor or the Court, could ascertain what the true balance was and whether the proof of claim was actually correct.

We believe at the claims objection hearing that we will be producing sufficient, more than sufficient evidence to show that those records are inadequate. And it's our belief that the Court will be able to, after hearing that evidence, have the authority to either disallow the claim in part, allow the claim in part, or disallow or allow the claim completely. All of that background goes to the fact that they have requested the Court to hear a motion for summary judgment today. Most of it is a no-evidence motion for summary judgment.

Our motion for continuance is brought under two grounds. Number one, we don't believe that under -- with the objection, claims objection being filed, that there is any way that the Court can make a determination on whether or not they're entitled to summary judgment until it's determined that they actually have a claim and what that claim is. That claim could be $2.84 or it could be $5,387,000. We just don't know that. And we did not really find that out until we got this

memorandum and learned that the records that they had not been willing to produce to us really didn't actually exist despite their machinations to the contrary.

And so, Your Honor, the other ground is under Rule 56(d) of the Federal Rules for Civil Procedure made applicable to the bankruptcy court by Rule 7056, under 56(d), Your Honor, where the Court can take into consideration the fact that the information that is being requested or that has been requested or that would be necessary to oppose a motion for summary judgment, if it is solely within the control and custody and possession of the non-movant -- us -- then the Court has the right to do one of three things.

The Court has the right to defer on ruling on the motion for summary judgment until such time as we have an opportunity to either have those records turned over or, as we've requested in the claims objection, have an independent third-party auditor look at those records and provide a report to the Court and to the Debtors as to what the actual balances due on these two or three loans are that are owing by these Debtors.

So the Court can defer ruling on the motion for summary judgment. The Court can deny the summary judgment without prejudice until those tasks are completed. The Court can also allow the non-movant -- the Debtors and the Plaintiffs in this case -- an opportunity to review those records, to take

the deposition of Ms. Banks as to what records are actually available and is her opinion agreed with the opinion of our CPA that there is no way to create a loan ledger, absent a full-blown audit, create a loan ledger to reflect the balance of each of these loans.

The Court can allow us additional time to be able to prepare affidavits, take depositions, or do other forms of discovery to be able to adequately respond through affidavit testimony or deposition excerpts to the motion for summary judgment. Okay?

Your Honor, had we known about this back six, seven months ago or in July, we would have gone ahead and deposed Ms. Banks and everything. We've been trying to work out through that. We had depositions scheduled. But once we found out about this memo and that there were actually no records, we had basically nothing to depose Mr. Davenport or the corporate representative about.

So we are asking the Court, pursuant to Rule 56(d), to allow, to continue this summary judgment hearing to a later date to allow us time to conduct that discovery, take the deposition of Ms. Banks and Mr. Davenport, and obtain the documents to where these Debtors and these Plaintiffs can properly respond to the motion for summary judgment from information that is now and has been outside of our control.

The second ground, essentially combined, really part

of the third ground as well, is that obviously it is inconceivable how the Court can rule on a summary judgment until such time as we know there is a claim. Their very first burden is to prove that they have a claim that is the basis upon which they can be granted summary judgment. So on those two grounds, Your Honor, we would ask that the Court continue this hearing.

Ms. Speer has provided us with dates for the claims objection hearing for November 23rd and December 3rd, which are in compliance with at least 30 days' time after the response is filed to hear the claims objection. So at a minimum, we would ask the Court to continue this summary judgment hearing to the date of the claims objection. If the Court rules they have a claim, the Court can be ready to go forward with the motion for summary judgment and resolve any and all or none of those issues at that time.

So we would ask the Court to grant the motion for continuance, reset this matter to a date determined by the Court, or at least to the date of the hearing on the claims objection.

THE COURT: All right, thank you.

MR. ROBERTSON: Good afternoon, Your Honor.

Drew Robertson on behalf of the Defendants.

If I may approach, Your Honor, I just have a couple of cases for the Court --

THE COURT: Of course.

MR. ROBERTSON: -- that have been highlighted and tabbed here that are part of my argument. And I have copies for Opposing Counsel.

THE COURT: Thank you.

MR. ROBERTSON: I think it's important -- I do have several points to make in response to the motion to continue. And just for the Court's knowledge, I will be handling the motion to continue under Rule 56(d). Mr. Novel is prepared to actually address the motion for summary judgment that is actually set for hearing this afternoon.

With respect to the 56(d) motion, the first point that I think is important for the Court to note is that the motion in and of itself under Fifth Circuit precedent is untimely. And that is the Martins case from the Fifth Circuit, 722 F.3d 249, that I've handed to the Court. There's a tabbed page there at the back of the opinion where, in this case, Martins, the party, was contending that the district court had abused discretion by denying the motion for continuance on the MSJ.

And as the Fifth Circuit notes, "Martins did not ask for more time until after the deadline had passed and did not articulate specifically what facts he needed to respond to the motion. The court did not abuse its discretion by denying the untimely motion for continuance."

If we look to the relevant timeline here, Your Honor, the motion for summary judgment was filed on July 27th. And as Mr. Moon has acknowledged in his arguments this morning, we are in an adversary proceeding, which means that the Federal Rules of Civil Procedure, including the Local Rules of the Northern District, are incorporated by reference under Local Bankruptcy Rule 7007, 7056. The motion was filed July 27th.

The response deadline for that motion for summary judgment was August 17th of this year. We're now 59 days past the deadline for any response to the motion for summary judgment, and there's still no response on file. Instead, what we've received is a last-minute, eleventh-hour filing yesterday asking to continue the motion for summary judgment when we're already well past the response deadline.

As the Fifth Circuit establishes in the Martins case and other cases that are cited in the response brief we filed this morning, to be timely and to be proper under the rule, a Rule 56(d) request is a request for the Court to extend the deadline -- to defer, rather, the ruling on the summary judgment and to extend the deadline for responding. To be timely, that motion must be made within the original time to actually respond to the motion for summary judgment.

So the Court could take up this Rule 56(d) motion if Opposing Counsel had filed before August 17th a request that said, hey, in lieu of responding to the summary judgment, Your

Honor, we need additional evidence for the following reasons, and we ask you to continue the summary judgment hearing and any response deadline. They didn't do that. They waited 59 days past the deadline to respond and then filed an eleventh hour request with absolutely no response to the MSJ on file.

So for that reason alone, it's untimely and it should be denied. What we have here is really a request for an extension of an expired deadline post hoc. And to be entitled to that relief, they would have to establish the absence of excusable neglect under Rule of Bankruptcy Procedure 9006(b)(1) and the Pioneer case from the U.S. Supreme Court, 507 U.S. 395. There is no reference in their 56(d) motion to the excusable neglect standard.

There's been no articulation about any of the elements or factors for considering excusable neglect. And so they can't possibly meet that burden where they haven't even attempted to make a showing to the Court that they meet it. So what we really have is a disguised Rule 9006 motion for a post hoc extension of a deadline filed after that deadline, wrapped up and disguised as a Rule 56(d) motion. That procedurally simply isn't proper. The Court should deny it on that basis alone.

Even if the Court were to say, regardless of it being untimely, the Court's going to consider it anyway, it still fails for several reasons. One of the things that needs to be

pointed out is the diligence factor. And I would point the Court to the January case. This is the case that's actually cited by Counsel in the motion that was filed yesterday. This is January v. City of Huntsville, 74 F.4th 646 (5th Cir. 2023).

And I've highlighted significant portions of that case beginning on Page 5 of the PDF, which is tabbed for the Court. The court explains Rule 56(d), what the standard is here. Curiously, Counsel's motion references a five-element or a five-factor test under January. It's actually a two-element test, as is clearly shown at the top of Page 5 there. That to win on his motion, this is the beginning of the first or the second column on Page 5, excuse me.

The Fifth Circuit says, "To win on his motion, January must show, one, why he needs additional discovery, and two, how that discovery will create a genuine issue of material fact. It's not enough to simply rely on vague assertions that additional discovery will produce needed but unspecified facts. Instead, he must set forth a plausible basis for believing that specified facts susceptible of collection within a reasonable time frame probably exist and indicate how the emergent facts, if induced, will influence the outcome of the pending summary judgment motion."

So there's a few problems with this. We've heard an argument today about we need all this additional evidence about QuickBooks. And I admit it's a little bit confusing, Your

Honor, because they seem to be arguing two different things. On the one hand, they say that they deferred these depositions because they had insufficient evidence and they needed to get the evidence in order to be able to take them.

Well, that gets back to the motion to compel hearing that we had with Your Honor a month ago, where all of the stuff they were trying to get, we pointed the Court to the Fifth Circuit Shaver opinion, which said it's evidence of things they're not entitled to in a lender liability dispute. And the Court agreed and sustained all of those objections and said they weren't entitled to the evidence.

So to the extent the 56(d) motion is an attempt to say that they want the evidence that the Court has already properly denied under the motion to compel, that's an improper attempt to relitigate the motion to compel. But with respect to what they're claiming they now need, they also say that this memorandum that was produced caused them to cancel the depositions because they learned at mediation, according to Mr. Moon this afternoon, that all of these documents don't exist.

And so it's a little bit confusing. I'm not sure if the standard is or if the argument is there are documents that they believe they don't have, which they should have, or they believe that documents don't exist. And if we accept Counsel's position that they canceled the depositions and they can't

proceed with the MSJ because they've learned that documents don't exist, well, then there's nothing for the Court to allow them to have under Rule 56(d) if the documents simply don't exist. And that is, of course, the position of Ceasons, which is that we have produced every document that is relevant to these loans.

The memorandum itself that Mr. Moon cites to in Paragraph 2 clearly explains how the manual spreadsheet-based system that Ceasons uses -- and I understand Counsel doesn't seem to accept the accounting system that's used by Ceasons, but we've explained that system. We've produced all of the documents. What Counsel wants is complete and unfettered access to the entire QuickBooks system, which the Court has already correctly said he can't have.

But the QuickBooks in the aggregate sets spreadsheets for every loan, and all of those spreadsheets, the spreadsheet-level data, that has all been produced. And in fact, the response that was filed this morning in opposition to the Rule 56(d), if the Court looks at Paragraph 8 of that response, we've broken down with a table and identified by Bates label all of the documents that Counsel is claiming they don't have. And so there's been no articulation either in the motion or in the argument this afternoon how is it that they claim not to have information which we have not only stated has been fully produced, but we've identified for them by Bates label.

And in fact, their own -- the cite that's made to Mr. Guillen (phonetic) in the response, Mr. Guillen himself in his declaration identifies many of the documents that they claim are missing.  And so they're speaking out of both sides of the mouth and it's just simply not correct that they don't have the documents.

But that then turns us to another problem which is that even if they don't have these documents, they've not been diligent in pursuing the discovery.  And that takes us to the next standard under January where the Fifth Circuit adds on to this test that they've articulated, again continuing on the second column of Page 5, the Fifth Circuit says, "He must also have diligently pursued discovery," referencing the discovery at issue.

And then they go on in that next paragraph, "Discovery here closed on March 2nd, 2022."  The court then explains over the next couple paragraphs how after the close of the discovery period, in this case it was a week past the close of discovery, the party started making allegations that they didn't have sufficient discovery and they eventually turned that into a Rule 56(d) motion requesting an extension of the pending summary judgment.

The Fifth Circuit explains at the bottom there of Page 5, "The district court treated this request as an eleventh hour Rule 56d motion and denied it.  It faulted January for

failing to specify which 'facts' he is unable to present due to the lack of requested material and why they are essential to his opposition."

Continuing on the next page, on Page 6 of the PDF, the Fifth Circuit says, "We agree. Before the district court, January did little more than suggest that the court before ruling on summary judgment until the discovery issues were resolved." They then go on and explain in detail, and I've highlighted all the relevant language there for the Court, that not only did they not explain what the actual facts were that they needed but they failed to exercise diligence. In that case, Your Honor, the Fifth Circuit said there was a lack of exercise of diligence because they first brought the discovery request to the attention of the court a week after discovery closed.

I would note for the Court that in this case, under the scheduling order that Plaintiffs agreed to and have never sought to amend, discovery closed in this case on August 10th. So we are well past the close of discovery. Trial is set for December 15th. And in a motion filed yesterday, they're claiming to the Court, hey, we don't have discovery and we need it to respond to the MSJ, yet there's been no articulation of this purported missing discovery since the close of discovery on August 10th.

In fact, according to Counsel's own arguments, they

first learned about some of these issues either when the depositions were canceled or at the mediation right around then, which was, that occurred September 21st of this year. And so even if we accept Counsel's articulation that it was more than a month after the close of discovery that at mediation they first learned of the need for this information, there's been no explanation as to why they didn't pursue this back on September 21st. Instead, they've waited almost an entire additional month before filing this eleventh-hour motion last night.

It clearly -- this is nothing more than an attempt to blow up the summary judgment hearing and try to raise issues that should have been raised long ago. But that then takes us to the next problem, which is, even if the motion were timely and even if they had been diligent in pursuing the discovery, which they've not been, we then get to the problem that none of the discovery they're seeking is actually material to the motion that is at issue. And it seems to me like there may be some confusion about the actual motion for summary judgment that's set today, but there are claims, as the Court knows, going both ways in this case.

We've heard articulation about the objection, the claim objection that was filed and the response to the claim objection that only happened on Monday and we can't possibly proceed with the motion for summary judgment until the claim

objection is resolved. But as the Court's well aware, the claim objection would relate to what my clients are potentially entitled to recover from the Debtor. That is not the subject of the motion for summary judgment.

The motion for summary judgment here attacks the Plaintiffs' affirmative claims against us in this adversary proceeding. Specifically, the grounds in the motion for summary judgment are the releases, statute of frauds, the no unwritten oral agreements clause, lack of fiduciary duty as a matter of law, justification, usury notice and savings clauses, and elements of the Plaintiffs' own affirmative claims. None of what's at issue in the MSJ has anything to do with the claims objection and none of it has anything to do with the evidence that Counsel claims that they need or that they have an inability to respond to the motion for summary judgment this afternoon.

And so, once again, even if we get to the third alternative, there's absolutely been no articulation in the motion or in the argument or in the declaration that was attached to the motion as to what specific evidence is needed to respond to what specific claims or arguments made in this motion for summary judgment that only attacks the affirmative claims of the Plaintiff. And so, essentially, for any one of those reasons, Your Honor, the motion is improper. It's a last-minute, last-ditch effort to try to avoid the summary

judgment for which, again, they have not responded and they are unprepared to proceed on this afternoon.

We would ask the Court to deny the Rule 56 motion in its entirety as it has discretion to do under the Fifth Circuit standard, including the <u>Martins</u> case and the <u>January</u> case, which are essentially on all fours here. Unless the Court has any other questions, I'll go ahead and sit down.

THE COURT: I have no more questions. Thank you.

MR. ROBERTSON: Thank you, Your Honor.

THE COURT: All right. This will constitute the Court's oral ruling. This oral ruling should be the Court's findings of fact, conclusions of law pursuant to Rule 52 of the Federal Rules, which is incorporated by Rule 7052 of the Bankruptcy Rules.

Before the Court is the Plaintiffs' Motion To Continue, which is at Docket 76, as well as the Declaration In Support at Docket 77. The Court has also reviewed and considered the Defendants' response at Docket 79, and the Court now has had argument from both Plaintiffs' counsel and Defendants' counsel. And the Court has considered those arguments, as well.

The Court finds as follows. The Plaintiffs' motion is not timely or proper under Rule 56(d) and, to be kind, lacks any appearance of good faith on the part of the Plaintiffs. The discovery deadline in this adversary proceeding is August

10th, 2026. I'll refer the parties to the Scheduling Order at Docket 14.

The expert designation deadline has also passed. Again, see the Scheduling Order at Docket 14. Plaintiffs failed to file a response to the Motion For Summary Judgment which is set for today, and they failed to do that timely or otherwise. But it's certainly not timely, and it hasn't been filed at all. And as Counsel had indicated, August 17th was the deadline to file a response to the Motion For Summary Judgment.

The Motion for Summary Judgment filed at Docket 54, the Brief in Support at Docket 55, and the Appendix at Docket 56 were each timely filed under the Scheduling Order on July 27, 2024. Notice of today's hearing was timely filed and served. See Docket Number 63. Plaintiffs failed to appear at the trial docket call on September 24, 2026. Again, that was set in the Scheduling Order, which again is at Docket 14.

The claims objections referenced in the Plaintiffs' motion were each filed, as Counsel stated, on September 21, 2026, which is approximately five months after the proofs of claim were filed. Yet, Plaintiffs waited until yesterday, late afternoon, 3:28 to be exact, to file the motion to continue today's hearing, which further suggests bad faith.

Further, the relevance of the claims objections to the pending Motion for Summary Judgment is speculative at best.

The Court agrees with Counsel Robertson in that I don't see where there's any really relevance to the claims objections to the Motion for Summary Judgment that's pending before the Court today. The Plaintiffs have failed to satisfy that they did not have adequate time to take discovery in the adversary proceeding. In summary, the Plaintiffs' motion was filed nine weeks after discovery closed, three weeks after docket call where the Plaintiffs failed to appear, and the day before the duly noticed summary judgment hearing.

The Court also agrees that both the Martins case and the January case are directly on point of this case, which each established that the motion in this case, again, is not timely or proper, and the Court finds that it was filed in bad faith for the sole purpose to cause undue delay.

So based upon the Court's findings stated here in the record, the Court concludes that the Plaintiffs' motion lacks merit, again, was filed for an improper purpose. The Court reserves the right to make additional findings of fact and conclusions of law. And also, there's no evidence of excusable neglect as to why the discovery deadline should be reopened since that deadline, again, was passed long ago. Consequently, the motion to continue today's hearing is denied.

So, Counsel, if you'd be so kind as to upload a form of order denying that motion, the Court would be happy to sign that order.

All right, we now have the motion for Summary Judgment, which is before the Court.

Mr. Novel?

MR. NOVEL: Thank you, Your Honor. And I'm going to plug in here. And I have a few slides I'll go through that relate to the Motion For Summary Judgment.

(Pause)

MR. NOVEL: Your Honor, as you just referenced, there is no opposition on file to the Motion For Summary Judgment that was filed by Defendants. The Defendants are both Ceasons Holdings, LLC, and John D. Davenport. And so the record that is before the Court is the Defendants' own summary judgment record. I know, and I'll go up through claim by claim, but we've had several discovery hearings and other bankruptcy-related hearings.

You've seen small pieces of what this case is about. But essentially it can be boiled down to what's on the screen right now, is that there's been a relationship between Ceasons Holdings and Keith Davis, who is the principal of every single one of these Plaintiffs' entities since 2017. In that time, Ceasons has made over 20 loans for more than $24 million to these Plaintiffs. During that time, there were no complaints.

There was a foreclosure in 2021 that, as we'll see, appears to be based on a petition that was filed in state court before this case was removed to your Court. It appears to

argue that that 2021 foreclosure was the basis of some fraud claim. There were no complaints about that until we got to the final stage before this litigation in September of 2025 because of repeated non-performance by the Plaintiffs on each and every one of these loans for years, several of them in maturity default, several of them in payment default, issues where there was misappropriation of proceeds that were improperly represented what they were going to be used for.

After years of this, in September, Ceasons finally -- of 2025, Ceasons finally had enough and posted these properties for foreclosure. The posting was actually, I believe, in August. And then September, Plaintiffs all of a sudden have all these issues with everything about their relationship with Ceasons and filed five claims, filed a TRO, try to blow up the foreclosure. That's what this case is about.

So where are we at now? There is no opposition to the record that's been provided by Ceasons. Under Rule 56, that doesn't mean that Ceasons automatically wins. I still have to prove up the case. But the record before the Court absolutely proves up this case on both no evidence grounds and on traditional grounds. Mr. Moon made a reference before that most of this is just no evidence stuff. That is absolutely false.

Maybe half of it is no evidence, half of it is traditional grounds, but -- and you can see here we've got the

21 loans. We have four of them that were in default at the time of this lawsuit that was on file. One of them ended up getting paid. Or five were in default at the time the lawsuit was filed. One of them got paid. Most of these aren't even cited in the petition that was filed in the state court. The 2021 Kapsen loan is the one that appears to be the basis of the fraud claim that I'll talk about. But again, all of these were in payment default, all of these in maturity default at various points.

Now, the petition for itself lists ten loans. And out of those ten loans, one of them actually doesn't even exist. We don't know where that came from. That's the June 14, 2019 loan to Kapsen for $500,000. And out of those ones that are referenced, the one that they omit is the one that is the subject of a lot of the bankruptcy issues. It's a $3,100,000 -- I'm sorry, it's the Parkerville and Oporto loans. Those aren't even in this list that we see here.

So, as I said, we have traditional grounds. We have no evidence grounds. We believe each and every single one of those grounds entitles the Defendants to summary judgment. The overarching threshold issue that you'll see in a number of the documents, and essentially out of the 21 loans that were made by Ceasons to the Plaintiffs, we're talking about the same or substantially the same documents for every single one of these loans. Davis is guaranteeing them, and these are all different

entities that he's using for his various projects.

But the first issue with respect to Plaintiffs' claims is at various points in time, multiple times over the seven-year relationship with the parties, they have signed releases for any and all claims. And so, again and again and again, the claims in this lawsuit are for any and all claims, and then specifically usury, breach of contract, failure to act in good faith, other torts, known and unknown, are signed throughout the relationship.

The bottom of this slide shows Kapsen signed these releases in September of 2020. Wintergreen signed them in July of 2021. Trelen, Develop 3, DYCAL, Jireten, and Turnerville all signed similar releases in September of 2023. Butcher-Robinett signed releases in September of 2024. And then finally, we have Parkerville, Oporto, and Davis 30 days before they file a lawsuit claiming about everything about their relationship with Ceasons, they sign a release to get an additional $285,000, and then they turn around and sue for a TRO 30 days later. There's nothing in the record that shows that there's anything actionable as to any of the Plaintiffs after the dates that they signed these releases.

Now, moving past that threshold issue, the releases, again, they have no post-release conduct. There's no reason the releases don't apply in the record. There's nothing the Plaintiffs have alleged outside the releases. Even the

petition, obviously, the petition cannot be evidence before the Court. Even if it were, the allegations are so conclusory and so limited in what is actually asserted, there wouldn't even be anything there to support the claims that they made. Now, the releases bar every count that they've asserted. They should be enforced as written. That's the Schlumberger case that's cited in our briefing. And again, that last release is in August of last year.

Now, moving to each claim one by one. Let's start with fraud. On no evidence grounds -- and, again, no evidence and traditional grounds on almost every single one of these claims. On the fraud claim, we challenged the items that are in red there, that there was a false statement, that there was a statement that was known to be false or made recklessly by the Defendants, that there was a statement that was actually and justifiably relied upon by the Plaintiffs, or there was a statement that ended up that was false that caused injury to the Plaintiffs. There's nothing in the record to show any of that.

Once we point out that there's no evidence, the burden shifted to the Plaintiffs. They didn't file any response. There's no evidence in the record to carry their burden. So on no evidence grounds, Plaintiffs lose on each and every one of the fraud counts.

Now, additionally, to the extent that they're trying

to argue there were some representations outside the loan documents, these loan documents have the same sort of waivers and releases and qualifiers that are in every single loan document that probably comes before this Court. We have notices of final agreement. There's no unwritten oral agreements. There's nothing outside the written agreements between the parties that will modify those. All modifications to the loan documents have to be in writing. None of that is in the record. Nothing was modified. The terms of these documents control, and on that record there is absolutely no evidence of a fraud claim.

Now, on a traditional ground, again, the fraud claim fails. 2021, I mentioned there was no complaint about that 2021 foreclosure until 2025, and this lawsuit was filed to the day, on the day the statute of limitations was going to expire on that foreclosure claim on 2021. At the time, though, let's see what Mr. Davis thought about the foreclosure.

The only question that was asked to Mr. Davenport, who, again, he's the sole agent and officer that has dealt with these loans, so he's the point of contact for Mr. Davis with everything that he's doing for Ceasons. At that time, the only question about the foreclosure, "Would the foreclosure" -- and this is in a text message -- "affect me and Terrence personally, credit-wise," in a text that he sent to Mr. Davenport. Nothing that suggests you've defrauded me,

you've told me you would work with me on these, or any of the other things that they may have possibly tried to allege. So, on that record, there is no justifiable reliance.

Again, we've got a repeat commercial borrower who's in default, has been provided with written notices of default, acceleration, and sale. There was no confusion as to what was going to happen with that foreclosure in 2021. And again, no complaints for over four years.

Again, I already talked about the waiver of any oral agreements, but here they are in black and white for the Court. The written loan agreement consisting of the note, deed of trust, and other documents executed at closing of the loan represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. That's what this entire fraud claim in this lawsuit is about, that Mr. Davis claims he may have been told something by Mr. Davenport inconsistent with the loan documents. There's no evidence of that, even if there were. It's waived and borrowed by the actual loan documents themselves.

Similar issues were addressed in Haase v. Glazner and some other cases that we've cited in our briefing. But again, on this record, the fraud claim fails. And again, it fails on both grounds. No evidence grounds on the left, and then the traditional grounds that it fails on the right-hand side on

this table.

The one thing I didn't touch on is the independent injury rule. And again, to the point that they were trying to bring some sort of claim of damages, everything damage-wise that they would try to seek through this fraud claim, again, there's no evidence of this, but if there were something they had put forward, the damages are the same issues that are addressed in the breach of contract. So there's no independent injury. The fraud claim is impermissible on that basis, as well. And we touched on the releases.

Moving to the breach of contract claim. In the petition, again, there's bare-bones allegations as to what the breach was. There's not a contract that's identified. There's not a provision of a contract that's identified. It is simply that -- and I have it quoted here, "Plaintiffs and Defendants are parties to the loans. Defendant Ceasons neither paid the third parties nor Plaintiffs all of the loan proceeds to which they were entitled. Defendant Ceasons has therefore breached the loans."

That is the sum total of what was alleged in a petition. Again, there's no evidence of any breach before the Court on this summary judgment proceeding. On no evidence grounds, there's no evidence of breach, no evidence of injury. And then, in addition, what the evidence does show on a traditional ground is in order to bring a breach of contract

claim, Plaintiffs would have to have performed or been excused from performing.

On the record before the Court, repeated payment defaults, repeated maturity defaults, nothing to suggest that these borrowers, these Plaintiffs, performed in a way that would allow them to bring a fraud claim. So, again, they failed to prove their own performance, failed to show a breach by Ceasons, failed to cause any damages and then, as a matter of law, again, we have the release. The oral modifications, to the extent they're claiming there was a breach of an oral modification, would be unenforceable, and a party in default cannot sue for breach.

Next, a breach of fiduciary claim. I mean, I know the Court probably sees this in banking context. It is well accepted in the state of Texas there is no formal fiduciary relationship between a lender and a borrower, and that is flat out what we have here. They also try to argue there's an informal fiduciary relationship. In the petition cited here on this slide, the sum total of the allegations about this informal relationship is that an informal fiduciary relationship existed between Plaintiffs and Defendants. Defendants breached their duties to Plaintiff. That's it.

We have no evidence or no information, not even evidence, we have no information as to what would be a basis of an informal fiduciary duty, and certainly no evidence because

there's none in the record.

Now, you know, the case law requires, from a lender perspective, in order for there to be an informal fiduciary relationship, you have to have some indicia of excessive control, and that's just not here. This record shows in Mr. Davenport, his declaration states that he was acting as a lender at all times, that he was carrying out his rights and obligations under the loan documents, and merely seeking to enforce his rights under the loans. There's not an informal relationship.

The other issue that courts look at is whether there was something in terms of a relationship between the parties before the business transaction started. Here, there's not. The quote from Mr. Davenport's declaration, "Neither I nor Ceasons knew Davis or any of the Plaintiff entities before the parties began discussions that led to a lender-borrower relationship. At all times, Davis and his entities were in control of any development projects."

So not only does Ceasons and Davenport not know Davis before they became a lender to him, and let me be clear, Mr. Davenport was not a lender. Ceasons was the lender. Mr. Davenport was the agent. They also, on this record, showed that they had no control over the project. The projects were entirely in the control of Mr. Davis.

How do we know that? If we look from Davis's

perspective, we have more text messages or emails from him. Direct quote, February 28, 2025, in an email that's attached to our summary judgment evidence, "John, I can handle all this. I'm coming to you as my lender I have been with forever and a day, which I respect and am grateful for." Mr. Davis was abundantly clear that the relationship was that of a borrower and a lender and nothing more, and there's certainly no evidence that would show something to the contrary.

So with respect to the claim for breach of fiduciary duty, Plaintiffs have failed to prove on no evidence grounds a relationship of trust apart from the loans. They've failed to prove that there's a lender that's in control of any of their businesses, any of the Plaintiffs' businesses. They failed to show that there's breach, injury, or some benefits to Ceasons. Now, as a matter of law, there's no fiduciary duty formally. There's no evidence of an informal -- formal fiduciary relationship. In fact, the evidence shows the contrary.

We've got two more claims to work through. Tortious interference is the next one. And again, going to the petition, there's nothing identified. No information, again, and certainly no evidence. The quote from the petition, "Plaintiffs have and had existing contracts with vendors and subcontractors. Defendants engaged in willful and intentional acts of interference with the contracts between Plaintiffs and their vendors/subcontractors." Doesn't identify a contract,

doesn't identify any action that Ceasons or Davenport took to interfere with the contract, and there's no loss that's identified. There's been nothing on no evidence grounds to controvert those statements.

Now, if we actually look at the evidence to the effect that they're trying to claim that Mr. Davenport was involved in this business interfering with these relationships, the back and forth between Mr. Davenport and Mr. Davis shows the exact opposite.

We've got multiple emails or text messages, and what they show, the first one here on the upper left, "Are you also now wanting to handle all vendor/contractor payments now by going direct to pay them, including DeSoto?" And that's the DeSoto project that we've seen in the bankruptcy. "If so, that's fine. I just need to know so I know how to deal with them moving forward." So Davis is telling Davenport, if you need to talk to these vendors, go ahead and do it.

Again, on February 23, 2024, "If there isn't a comfort level in giving me the funds, I will have them contact you directly and move out of the way." So again, authorizing Mr. Davenport to speak to these contractors.

And then finally, from Mr. Davenport's declaration, "In my interactions with third parties and efforts to foreclose on the properties, I at all times acted in compliance with the loan documents, with Plaintiffs' authorization to speak with

third parties, and made no efforts to interfere with any contractual relationship."

And then finally, on top of all this, Judge, is the case law provides that a lender collecting its collateral is privileged as a matter of law to take actions that are authorized by the loan documents. That's exactly what we have here.

So again, summarizing the tortious interference claim, there's no evidence that there was a contract that was interfered with. There's no evidence of an intentional act of interference. There's no evidence of causation or damages. On the traditional motion side, we have a justification privilege that we've established. We had consent from the Plaintiffs to talk to third parties, and then all of these issues were released again by the releases.

Finally, moving to the usury claim, there's multiple issues here. On a no-evidence basis, there's nothing to show that the Defendant contracted for, charged, or received interest above the lawful maximum. There was no pre-suit notice filed here. The Court's well aware that if you're going to file a usury claim, the business and commerce -- or sorry, the Finance Code requires you to send a 60-day notice of what the issues are. That didn't happen here. Now, in an ordinary case, that's an abatement issue. It's not fatal to a usury claim.

The distinction here is our loan documents, the Ceasons loan documents incorporate this requirement into the deeds of trust on all of these loans. And so this now is a precondition to suit. So by not sending that usury cure notice, and they didn't just not send it pre-suit. It was a special exception that was filed in state court, and this has been an issue that's been raised in addition to everything and multiple other times in addition to this summary judgment motion. There's never been a notice. There's never been anything to suggest that there was a usurious charge by Ceasons in any way, shape, or form.

So there's simply not evidence of usury and, even if there were, the preconditions were not satisfied to bring that usury claim;. And then again, even if they got past that hurdle, there's usury savings clauses in each and every one of these loan documents, and they appear multiple times. They're in a guarantee. They're in deeds of trust. They're in the promissory notes. And as to the guarantee, Mr. Davis has also asserted a usury claim. As a matter of law, a guarantor does not have standing to bring a usury claim, so that claim also fails.

So -- and again, we have cites here where they appear, the deed of trust, the guarantee, the note, and then also there's a savings clause in the note. So the record is replete with evidence showing that there are usury savings

clauses and that this was a precondition, or that the cure notice was a precondition to bringing a usury claim.

So again, as with the other claims, on a no-evidence basis, there's no evidence of interest charged above the lawful maximum. There was no statutory pre-suit notice. There's no deed of trust. The 60-day notice is also in the deed of trust. That's where I mentioned it's incorporated into our loan documents. On the traditional grounds, savings clauses would say even if there were a usury. And Mr. Davenport's declaration, I believe, states that at all times amounts were charged in compliance and accordance with the laws of the state of Texas.

So, Judge, that's the walkthrough of all the claims. Each of the claims has fatal flaws, both on no-evidence grounds, on traditional grounds. And even if they didn't, each of these causes of action had been waived by Plaintiffs multiple times over the seven-year relationship between the parties. So, the Defendants would ask that summary judgment be granted on the claims asserted by the Plaintiffs in their entirety in favor of the Defendants.

THE COURT: All right. Thank you, sir.

MR. NOVEL: Thank you.

THE COURT: Mr. Moon?

MR. MOON: Your Honor, I don't want the Court to think this is too flippant, but Judge McGuire in -- Bob McGuire

in one of the summary judgment hearings I had in connection with this said one of the key things about summary judgment, especially in the bankruptcy court, where we have the advent of an adversary proceeding that's generally competing with the main bankruptcy case, is that summary judgments in the bankruptcy court have a seminal initial burden, and that is to prove that you have a debt in my Court that is enforceable against this debtor.

And in the words of Judge McGuire, you don't even have the barn door unlocked, much less have it open for me to look at all these other reasons why I should grant you summary judgment. I think Judge McGuire's statement there helps.

THE COURT: Help me with that argument. You're losing me. This summary judgment, it's your client's --

MR. MOON: I understand, Your Honor.

THE COURT: Let me finish. Your client's claim is against the Defendants. It has nothing to do with any claims the Defendants may or may not have against the Debtors or the other Plaintiffs. I disagree with the -- that's their interpretation.

THE COURT: Well, explain how this isn't since --

MR. MOON: This creditor --

THE COURT: Let me finish.

MR. MOON: Sure, I'm sorry.

THE COURT: The complaint asserted fraud, breach of

contract, breach of fiduciary duty, tortious interference with contract, and usury all against the two Defendants, Ceasons --

MR. MOON: That's correct.

THE COURT: So help me. This is your -- the lawsuit that you guys --

MR. MOON: I understand.

THE COURT: -- your clients filed back in state court over a year ago.

MR. MOON: I understand. And one of the assertions that we've made in the lawsuit is that the amount of the debt that they claim to be owing, I think it's clear, Mr. Novel admitted that. One of the claims we made is that we cannot verify what the balances are.

I want to cite the Court, I'm not going to address all the issues relating to fraud and all that stuff because I don't believe we even get there, as I believe was what Judge McGuire was pointing outs you have, under the Fifth Circuit case of In re Fidelity Holding, in the Fifth Circuit, 837 F.2d 696 (5th Cir. 1988).

THE COURT: Say that again, 837?

MR. MOON: 837 F,2d 696, 1988 Fifth Circuit, In re Fidelity Holding Company. Under Fidelity Holding, while the creditor has a proof of claim that initially creates a prima facie case, if the debtor produces evidence in the main bankruptcy case rebutting that presumption of prima facie

validity --

THE COURT: Prima facie validity of what?

MR. MOON: Of the validity of the claim.

THE COURT: Which isn't before the Court right now.

MR. MOON: I disagree, but may I?

THE COURT: How? Help me, I want to --

MR. MOON: I understand.

THE COURT: I'm not trying to be flippant. I want to try to understand your argument because I frankly don't.

MR. MOON: In re Fidelity address the same issue. The claim was unverifiable based on the lack of documentation and information, okay? In any summary judgment, forgetting we're in the bankruptcy court, in any summary judgment, if a bank is suing on a debt or they are defending a counterclaim based on a claim by the borrower against them, that they're entitled to recover their debt, which they have -- Mr. Novel failed to point out to the Court that they have filed a counterclaim in this case for the debt.

So for him to say with a straight face that they're not trying to -- it's just our lawsuit, they're not --

THE COURT: But that's not before the Court today.

MR. MOON: Do what, Your Honor?

THE COURT: But that's not before the Court today.

MR. MOON: Well, my point was the fact that they are making a counterclaim back to collect the debt in this

adversary proceeding is contrary to the statements that he made that we're not claiming anything. But in In re Fidelity --

THE COURT: In their motion for summary judgment, they're not.

MR. MOON: Your Honor, it's our position that until they prove that they have a valid debt, that that creates a genuine issue of material fact.

THE COURT: Well, let's assume they have no valid debt. Let's assume, just for argument's sake.

MR. MOON: Then they --

THE COURT: That still doesn't resolve your client's claims for fraud, breach of contract, breach of fiduciary duty, tortious interference with contract, and usury.

MR. MOON: I believe it does.

THE COURT: How?

MR. MOON: I know the Court disagrees to that, but I think --

THE COURT: I don't mean to flippant, but please help me understand this.

MR. MOON: Okay.

THE COURT: I want to make sure I thoroughly understand your argument, so I can rule appropriately.

MR. MOON: Let me go back to Fidelity. Under Fidelity, it says that the Fifth Circuit expressly held that a claiming party -- they are a claiming party. They've claimed

a -- they filed proofs of claim in the bankruptcy. They have filed a counterclaim in this proceeding itself -- has the ultimate burden of proof. If the creditor cannot verify the balance by reason of lack or inadequate documentation, they cannot, as a matter of law, meet the burden of persuasion, the ultimate burden required to prevail on a motion for summary judgment.

Another illustrative case, Your Honor, is In re Richard V. Colvin. That was out of the Western District of Texas in 2012. In evaluating motions for summary judgment over an asset dispute, proof of claim, or a verifiable balance on a debt, the court noted that a lack of documentation or unverifiable proof under 3001, Rule 3001, legally prohibits and deprives the creditor of being entitled to summary judgment. That's a 2012 decision out of the Western District of Texas.

THE COURT: I assume that's on summary judgment on that lender's --

MR. MOON: Yes. Yeah, there were cross-motions.

THE COURT: -- affirmative claim?

MR. MOON: Cross-motions -- it was in connection with a summary judgment, cross-motions for summary judgment in connection with the claim by the creditor and the claim by the debtor trying to determine the extent and validity of those claims.

THE COURT: Okay.

MR. MOON: But anyway, once the Debtor objects to the unverified nature of the claim, and we'd ask the Court -- as an aside, we'd ask the Court to take judicial notice of the claims objection that is filed with the Court and the documents that are following that, both the affidavit of Mr. Guillen, excuse me, the declaration of Mr. Guillen, as well as the declaration that was filed in connection with the motion for continuance, which is the affidavit, the declaration that I filed. We'd ask the Court to take judicial notice in considering whether they had met their burden on summary judgment.

But in the Colvin case, the Court, Western District Court said it is the claiming party, i.e. Ceasons, that bears the burden of proof to support their motion and with credible evidence that, and this is key, that would entitle them to a directed verdict if appropriate. Your Honor, based on the evidence that's before the Court --

THE COURT: What's the case cite again?

MR. MOON: 939 F.2d 1257. I'm sorry, excuse me, that's the other. It's Case Number 11-51241. It's a memorandum opinion (Bankr. W.D. Tex. 2012).

But, Your Honor, the takeaway on that is, I believe, is that if the Debtor objects to the proof of claim and there is a pending motion for a summary judgment that's filed, that under the standard summary judgment document, because the creditor has the ultimate burden of proof -- Mr. Novel admitted

they have the burden of proof. Whether we don't show up for the hearing today, they still have the burden of proof to show that there is no genuine issue of material fact.

And we believe that In re Fidelity Holdings and the Richard Colvin case both established that in connection with the summary judgment hearing, that the filing of an objection that the claim is unverifiable and cannot be ascertained as a matter of law creates a genuine issue of material fact and that they cannot meet their burden under Rule 56.

Your Honor, the Fifth Circuit summary judgment standard has also been established in cases like this in International Shortstop v. Rally's, Inc., 939 F.2d 1257. That's a 1991 case out of the Fifth Circuit, where it says, "The moving party bears the burden of proof at trial or in a summary judgment to support their motion with credible evidence that would entitle them to a directed verdict. If they cannot prove the seminal balance or validity of the indebtedness claim to be due and owing in connection with the claim, then they cannot prevail and this court cannot grant summary judgment because a genuine issue of material fact exists as to the amount of the debt claimed to be owing."

So, Your Honor, we would say that this Court with this Court that Mr. Novel despite all the other claims about fraud and everything, we don't even get to those. They have not shown the seminal burden of proof or met that seminal

burden of proof that they have a debt upon which they can enforce their counterclaim or which they can defend against in connection with these lender liability claims.

That's all I have, Your Honor.

THE COURT: All right, thank you.

MR. NOVEL: I can be brief with this, Your Honor. First, I'm going to plug back in on one item here.

To the extent that there's an argument that we somehow haven't established debt that's owed. Again, that's a counterclaim. That's a separate issue. But in Mr. Davenport's declaration, what we'll pull up on here as of July 27 is a table that shows the exact status of the loans. I've highlighted them here. It's on, for the Court's reference, it's Appendix Page 7.

I'm not sure if it came up, but it does show the amount due to Butcher-Robinett and the amounts that are due from Parkerville and Oporto. And so, there is evidence in the record and that's just one of the items. There's several references to the principal amounts that are owed and other amounts that are owed in the declaration.

With respect to this In re Fidelity case, that's just simply not on point. It's a claims objection case. Specifically, it's a proof of claim case. It holds that when a creditor files a proof of claim and the objector rebuts it, the creditor carries the ultimate burden of proof on that claim.

And so, totally separate issue here. We have this proof of -- or this objection to the proof of claim that's been filed. We'll deal with that as a later date. Mr. Moon's acting like that's the silver bullet on these claims.

We filed an objection to Mr. Guillen's affidavit. It's attached to -- or declaration, rather. It's attached to that proof of claim. He's not designated. And even if he were, the opinions in that declaration are so flimsy as to, I mean, I can't believe that they're attached to that document.

But, again, that's a claims objection issue. That's a separate hearing. That is not the summary judgment motion. We are not seeking to collect the amounts that are affirmatively due to Ceasons. We've established the amounts that are owed. In re Fidelity simply doesn't apply here. So, again, we would ask the Court to grant summary judgment in favor of Defendants on each and every claim that the Plaintiffs have asserted.

THE COURT: All right.

MR. NOVEL: Thank you.

MR. MOON: Just --

THE COURT: Of course, Mr. Moon.

MR. MOON: Just a couple more points, Your Honor.

Number one, I want to make sure the Court understands for the record as far as the proof, the claims objection, et cetera. As you indicated and found in connection that

continuance, the discovery deadline was sometime in early August. The deadline to designate experts was there and everything. But what I want to point out is, as the Court will note, and I'd like to ask the Court in connection with the -- I know the Court does not have to, but to admit the accounting memorandum as an exhibit in our motion for summary -- excuse me, motion for continuance hearing.

Regardless of that, that was not dated and was not provided until August the 27th, well after all of those deadlines had run. Now, I would not ever attribute a lawyer holding off on a document until after deadlines have run, but the circumstances of the way this happened sure seem to indicate that. I had been --

THE COURT: So let me --

MR. MOON: I had been asking for these documents for months.

THE COURT: So, when did you get that document?

MR. MOON: August the 26th or 27th, the day after.

THE COURT: So, why was the pleading filed literally yesterday afternoon to continue?

MR. MOON: Because their response to the claims objection wasn't filed until Monday, the 16th.

THE COURT: What does that have to do with anything?

MR. MOON: Your Honor, I had no idea what their response was going to say. Their response may say, James,

you're right. Now, it didn't and I'm sure they wouldn't have thought it would. But it could have said, yeah, you're right. We can't verify these records are all correct. This memo is correct. We don't have the documents to do it. We can't prove to you other than what John Davenport can testify to or machinate into his spreadsheets. We had no idea until their response was filed.

That is a set deadline that is set by the claims objection by the Rules. That was October the 12th.

THE COURT: Again, that has nothing to do with what's before the Court today.

MR. MOON: Immediately, upon seeing their response, we filed the motion for a continuance. The Court's already ruled on that. I don't want to relitigate that. We'll deal with that later.

THE COURT: I understand. I'm trying to make sure I understand your argument because it's really --

MR. MOON: Yeah. My argument is just, number one, how in the world can they be entitled to summary judgment on claims and they do have a counterclaim against us. I don't know --

THE COURT: Again, stop, stop. There is no motion for summary judgment today on their counterclaims asserting claims against the Debtor or the other Plaintiffs.

MR. MOON: Yeah.

THE COURT: There is none. That's not before the Court today.

MR. MOON: I agree. I agree.

THE COURT: So why do you keep saying that?

MR. MOON: But I don't think that's required.

THE COURT: So why do you keep saying that?

MR. MOON: Because Mr. Novel has taken the position that they're not making a claim for the debt in this lawsuit and that is a false statement.

THE COURT: Well, that's true.

MR. MOON: Okay.

THE COURT: I get you on that.

MR. MOON: That's all I wanted to --

THE COURT: But then again --

MR. MOON: Right.

THE COURT: -- once the bankruptcy is filed, I think Mr. Novel's position might be, I don't want to speak for him, but now that the Debtors have filed bankruptcy, that's going on in the claims resolution process.

MR. MOON: Correct.

THE COURT: And they are not pursuing that.

MR. MOON: Correct.

THE COURT: So if, logically, I'm trying to understand your argument. So you're saying if they're not entitled to a proof of claim, and this is what you said to me

just a few minutes ago, therefore, they're not entitled to summary judgment today. So basically, what you're telling me is that if they don't have a claim, then your clients, all your clients' claims go poof?

MR. MOON: No. No. We still have suffered damages because of their conduct. That is the fact.

THE COURT: And that's what's before the Court today.

MR. MOON: Yeah. That's the fallacy of their whole argument.

THE COURT: Okay. All right.

MR. MOON: Is that just because they don't have a debt, if the debt had been paid off, we could still bring -- Texas law is very clear, the Fifth Circuit's very clear, we can still bring -- the In re Bailey Tool case, Judge Jernigan's case here, the 145-page opinion on the Bailey Tool Manufacturing case, made it very clear that it is irrelevant that the debt has been paid off. In that case, that was a factoring case. All the factoring invoices have been taken and gotten and been applied against the debt. But that didn't deprive the debtor, Bailey Tool, of bringing the lender liability claims for the damages that it had caused in causing the bankruptcy filing.

So, that's just our position. And I know that's not before the Court today. It's going to be before the Court eventually. But our --

THE COURT: What's going to be before the Court eventually?

MR. MOON: Our motion for summary -- well, the claims objection, I'm sorry.

THE COURT: I agree with that.

MR. MOON: On the claims objection.

THE COURT: And you've already filed that and that's --

MR. MOON: Right, right.

THE COURT: -- on its way in the bankruptcy case.

MR. MOON: Right. And so, it's inconceivable how they cannot say that there is no genuine issue of material fact when there is a claims objection existing that seriously casts into doubt whether they have a good proof of claim on file. I know that's not before the Court.

THE COURT: Okay.

MR. MOON: The other problem is, if this Court holds a hearing on the 23rd of November or the 3rd of December and decides that the claims is no good and disallows their claim in full, we have two inconsistent rulings.

THE COURT: How?

MR. MOON: You've granted them summary judgment on a claim that doesn't exist.

THE COURT: That's where you're just totally losing me, Mr. Moon.

MR. MOON: Okay.

THE COURT: It's your client's direct claims --

MR. MOON: Correct.

THE COURT: -- against the two Defendants in this case.

MR. MOON: Right. For damages arising out of their conduct. Not in connection with their enforcement of the debt. They didn't file their counterclaim until after we had filed the lawsuit. The claims that we have against the Defendants, Mr. Davenport and Mr. -- and Ceasons Holdings are not, do not fail or survive based on the fact that they do or do not assert a counterclaim back to get us the debt back. Okay?

They asserted that early on in the case. I believe that was even asserted before the case was removed. But those claims that the Plaintiff has asserted, we believe at the trial of this case, we're going to show damages of delay damages that caused us to have to pay additional amounts of money to contractors, that there were additional attorney's fees that were having to be incurred, that there were contracts lost and profits lost with D.R. Horton on the sales of lots because of their conduct. Nothing to do with what the balance of their debt is or what they are entitled to recover.

The point is we think we are going to be able to show at least five to eight million dollars' worth of damages on our claims that reflect nothing to do with what they claim to do or

are going to attempt to show this Court they are entitled to offset against those damages in connection. But if this Court rules ultimately that they do not have a claim in this bankruptcy, that is going to be inconsistent with and is going to make a confirmation of a plan extremely difficult when there is a judgment against the Debtors.

And I want to point that out. Mr. Novel said that, well, these other parties, they don't have anything -- I mean, the Debtor's not going to do this. A summary judgment against the Plaintiffs is a summary judgment against the Debtors. So it is going to affect the Debtors' ability to reorganize, the Debtors' ability to pay back the claims, the Debtors' ability to deal with the motion to escrow, the final hearing on the motion to escrow to disburse those proceeds.

So it is not just going to affect -- if you leave the other seven Plaintiffs out of it, then a ruling on this summary judgment is going to affect the Debtors as well because they are Plaintiffs as well as being Debtors in this bankruptcy case. So it is going to cause an inconsistency in the rulings of this Court that they may not have -- and I know the Court's not going to --

THE COURT: I just want to ask one more question because we need to go. I've got another matter that's set for hearing. So when do you anticipate actually pursuing those affirmative claims which are in fact before the Court in this

adversary proceeding today which is in fact the subject of the motion for summary judgment?

MR. MOON: Yes. We do anticipate creating them. We are taking discovery. We are building evidence, and we plan --

THE COURT: The discovery deadline is gone.

MR. MOON: We have taken discovery, I said.

THE COURT: Okay. Well then, okay. There's been enough said. I think I --

MR. MOON: I've got my clients. I've got three or four clients to testify. We have designated two experts and everything, so.

THE COURT: All right, that's fine. I think that's enough for today.

MR. MOON: All right.

THE COURT: Thank you Mr. Moon.

MR. MOON: Thank you.

THE COURT: What I tell every counsel who uses a PowerPoint, always very helpful, but I always ask counsel to file it on the docket sheet just so it's there just in case there are appeals. I think the Appellate Court should be entitled to see at least what the Court has seen. I understand it's not evidence, but I always have counsel do that just so it's --

MR. NOVEL: We'll get it filed, Your Honor.

THE COURT: -- it's there. So if you'd file that,

I'd appreciate it.

The Court will obviously take this under advisement. I will rule as quickly as I can. Thank you all.

MR. MOON: Thank you, Your Honor. May I be excused?

THE COURT: And with that -- of course. Thank you Mr. Moon.

MR. MOON: Thank you.

THE COURT: Thank you, Mr. Novel and Mr. Robertson. Thank you both very much. You are each excused.

(The proceeding was adjourned at 2:43 p.m.)

* * * * *

CERTIFICATE

I, DIPTI PATEL, court approved transcriber, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and transcribed to the best of my ability.

___________________________

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

Liberty Transcripts    Date: October 30, 2026